UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **ROBIN ANNETTE LONG,** ) | **Case No. 11-11896 HRT** |
| ) | **Chapter 7** |
| **Debtor.** ) | |
| ) | |
| ) | |
| **MELISSA HOULNE,** ) | **Adversary No. 11-1394 HRT** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **ROBIN ANNETTE LONG,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER ON AMENDED COMPLAINT OBJECTING TO DISCHARGEABILITY OF A DEBT

   This case comes before the Court on trial of Plaintiff's *Amended Complaint Objecting to the Dischargeability of a Debt* (docket #10) (the "Complaint").

### I.  FACTUAL BACKGROUND

   Prior to the events leading to this Complaint, Plaintiff Houlne and Defendant Long were social friends.  In 2009, Houlne opened a savings account at JPMorgan Chase Bank, N.A., (the "Account") in her own name but with funds provided by Long.  Houlne did so as an accommodation to Long in order to provide Long with access to a banking account without her name being associated with it.  Houlne was the sole owner of the Account.  Long was able to access the Account only through the use of an ATM card provided to her by Houlne.  Initially, Long made all of the deposits of funds into the Account and utilized those funds for her own purposes.  At all relevant times, as the Account owner, Houlne maintained all of the attributes of ownership, including full access to Account funds; access to on-line Account information; and the ability to terminate Long's access to the Account at any time.

   In late 2009, Houlne and Long agreed to participate in a joint business venture.  There was no written partnership agreement.  Houlne testified that Long was to be in charge of the business operations but Houlne also testified to her own participation in the purchase of materials and equipment for the business.

ORDER ON COMPLAINT OBJECTING TO
DISCHARGEABILITY OF A DEBT
Adversary No. 11-1394 HRT

In January of 2010, Houlne obtained a loan of funds in the face amount of $25,000.00 from the Lending Club (the "Loan").[1] After the deduction of up-front fees, the Lending Club deposited $23,875.00 into the Account. Houlne and Long agreed the purpose of the Loan was to provide start-up capital for their business venture. Monthly payments to the Lending Club, in the amount of $909.25, were deducted directly from the Account from February 25, 2010, through March 4, 2011.

No documents concerning the Loan account were offered into evidence. Thus, no account statements or promissory note are available to the Court. Houlne testified that she thought the interest rate on the Loan was approximately 20%. Assuming a 36 month amortization, by the Court's calculation, an interest rate of 18.433% would result in the $909.25 monthly payment that was taken from the Account by the Lending Club.

The Court admitted into evidence bank statements offered by the Plaintiff reflecting activity on the Account from January 21, 2010, through March 16, 2011. Those bank statements reflect the following activity:

1. The Account contained $15.62 of Long's personal funds prior to the deposit of Loan proceeds from the Lending Club.
2. A deposit of $23,875.00 from the Lending Club was made to the Account on January 28, 2010.
3. Additional unidentified deposits were made to the Account amounting to $19,173.22. Houlne's trial testimony establish that these funds were all deposited by Long.
4. Houlne made one deposit by way of transfer from her personal checking account in the amount of $1,093.00.
5. Cash in the amount of $15,946.25 was withdrawn from the Account.
   a. $6,000.00 was withdrawn directly at a bank branch. Trial testimony established that Long lacked the authority to independently withdraw those funds.
   b. $9,946.25 was withdrawn using ATM machines. Trial testimony established that all of these funds were withdrawn by Long.
6. An additional $15,746.98 was utilized to make identified payments to:
   a. Woodruff Property Management, Long's landlord ($14,234.00);
   b. Sprint ($1,052.00);
   c. Qwest ($245.70);
   d. Golden Rule Insurance ($215.28).

---

[1] Both Houlne and Long participated in the application process, but Houlne's credit information was used to acquire the Loan and she appears to be the sole obligor on the Loan account.

ORDER ON COMPLAINT OBJECTING TO
DISCHARGEABILITY OF A DEBT
Adversary No. 11-1394 HRT

7. $419.00 was transferred from the Account into Houlne's personal checking account.
8. $11,820.25 was paid directly to the Lending Club in repayment of the Loan.
9. The bank paid $.18 in interest on the Account and collected $437.00 in bank fees for ATM charges; low balance service fees; and overdraft fees.

## II. DISCUSSION

The Court will preface its discussion with an observation with respect to the Defendant's testimony. The Court does not find Long to be a credible witness. To the extent that Houlne's testimony contradicts Long's, the Court has discounted Long's testimony. As a consequence, the Court has relied most heavily on the documents admitted into evidence, particularly the bank statements, and Houlne's testimony.

The testimony was contradictory as to whether or not there was an agreement to enter into the business venture before acquisition of the Loan. The Court credits Houlne's testimony that the parties agreed to enter into the business of growing medical marijuana prior to seeking the Loan as startup money. Long testified that when the Loan was acquired they were considering several business ventures and sought the Loan prior to deciding on a business to enter into. That testimony was not credible.

Nor did the Court find any of Long's testimony with respect to an alleged travel business to be credible. All of that testimony has been disregarded.

### A. The Parties' Business Relationship

To make sense of the evidence, the Court must first characterize the relationship of the parties. Nothing was committed to writing and the Court has scant evidence of the parties' verbal agreement. The evidence does establish that Houlne and Long entered into a joint business venture. Under Colorado law, the parties' entry into a joint business venture constitutes a general partnership. *See* COLO. REV. STAT. § 7-64-202 ([T]he association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership . . . ."). Both partners are jointly and severally liable for all partnership obligations. COLO. REV. STAT. § 7-64-306. Thus, even though the Loan was taken out in Houlne's name, the Court finds that the Loan was acquired as start-up money for Houlne and Long's business venture and they are both liable for its repayment.

The evidence, as a whole, leads the Court to conclude that the parties did takes steps toward operation of their chosen business. Unfortunately, the most credible testimony from Long was: "We were pretty much two girls that didn't know what we were doing in business." There is no evidence that revenues were ever generated from business operations.

ORDER ON COMPLAINT OBJECTING TO
DISCHARGEABILITY OF A DEBT
Adversary No. 11-1394 HRT

B.  Fraud under 11 U.S.C. § 523(a)(2)

Houlne's Amended Complaint alleged that Long's obligation to her is non-dischargeable by reason of fraud under 11 U.S.C. § 523(a)(2). The elements that Houlne needs to prove to support her cause of action under § 523(a)(2)(A) are:

> (1) the debtor made a false representation; (2) the debtor made the representation with the intent to deceive the creditor; (3) the creditor relied on that representation; (4) the creditor's reliance was [justifiable];[2] (5) the debtor's representation caused the creditor to sustain a loss.

*Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

The Court finds no persuasive evidence of fraud. There was some testimony that Houlne was misled with respect to the existence of a license to grow medical marijuana. Other testimony refers to funds taken directly from the Account by Long's landlord; Long's promises to restore the funds; and her failure to do so. But the testimony supporting misrepresentations from Long to Houlne was vague. The evidence falls short of proof of a misrepresentation made with an intent to deceive or that Houlne suffered damages traceable to her reliance on any such statements.

C.  Embezzlement under 11 U.S.C. § 523(a)(4)

Embezzlement is a "'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud.'" *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir. 1986) (quoting *United States Life Title Ins. Co. v. Dohm (In re Dohm)*, 19 B.R. 134, 138 (N.D. Ill. 1982) (further quotation omitted)), *overruled on other grounds by Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Houlne testified that, shortly after receiving the Loan proceeds, she withdrew sums of money from the Account for the purpose of purchasing materials and equipment for the business. Otherwise, the Court has no evidence that Loan proceeds were expended toward business operations. Because only Houlne could withdraw money from the bank branches, the Court

---

[2] The *Fowler Bros.* court used the term "reasonable" reliance but, in the case of *Field v. Mans*, the Supreme Court held that § 523(a)(2)(A) requires justifiable, and not reasonable, reliance. 516 U.S. 59, 74 (1995). The Court must apply that standard rather than the reasonable reliance standard articulated in *Fowler Bros.*

ORDER ON COMPLAINT OBJECTING TO
DISCHARGEABILITY OF A DEBT
Adversary No. 11-1394 HRT

concludes that the $6,000.00[3] withdrawn from the Account at the bank branches was money that was withdrawn with Houlne's full knowledge, consent and participation. The Court has no evidence from which it can find that Long misused those funds.

The sum of $9,946.25 was withdrawn from ATM machines. Because only Long had an ATM card, the Court concludes that entire sum was withdrawn by Long. The Court has no evidence of how those funds were expended but Long will bear the burden of that failure. Long did not respond to Plaintiff's written discovery. In the Plaintiff's discovery, Long was asked to provide an accounting of funds expended for business purposes. She failed to provide that information. As between the two parties, Long was in the best position to provide that information and she will bear the consequences of her failure to respond. The Court finds that the entire sum of $9,946.25, withdrawn from the Account by ATM, was used exclusively by Long to defray personal expenses.

Additionally, the bank statements show direct withdrawals from the Account taken by Long's creditors Woodruff Property Management ($14,234.00), Sprint ($1,052.00), Qwest ($245.70) and Golden Rule Insurance ($215.28) in the total amount of $15,746.98. From the evidence, the Court concludes that Long authorized those withdrawals and the funds were used exclusively to defray Long's personal expenses and served no business purpose.

Finally, the Court has examined the bank fees assessed on the Account. Those fees, in the total amount of $437.00, were assessed for maintaining a low balance, ATM fees, and overdraft charges. The court finds that those charges were assessed on account of Long's usage of the Account and also constitute a portion of Long's improper diversion of Loan proceeds for non-business purposes. In total, the Court finds that Long used $26,130.23 from the Account for non-business purposes.

Houlne's claim that the parties agreed funds in the Account, following acquisition of the Loan proceeds, were to be used exclusively for business purposes does not stand up to scrutiny. Prior to the deposit of the Loan proceeds into the Account, Houlne and Long established a course of conduct. Long was allowed to deposit personal funds into the Account and withdraw funds from the Account for her personal use with the ATM card that Houlne provided to her. That course of conduct continued following the deposit of the Loan proceeds. Because of Houlne's ownership of the Account and control over it, and because of her knowledge of the transactions occurring on the Account, the Court finds that course of conduct continued with, at minimum, Houlne's tacit approval.

---

[3] These took place on February 1, 2010, ($3,000.00), February 22, 2010, ($2,000.00) and March 22, 2010, ($1,000.00).

ORDER ON COMPLAINT OBJECTING TO
DISCHARGEABILITY OF A DEBT
Adversary No. 11-1394 HRT

But Houlne's tacit approval of the continuation of that course of conduct does not imply an approval of Long's misuse of Loan proceeds. The fact that Long's personal funds were intermingled with the Loan proceeds does not constitute evidence that Long was permitted to use Loan proceeds for her personal expenses. The Court finds the contrary to be true. The evidence persuades the Court that the implicit understanding of the parties was that Loan proceeds were to be used exclusively for business purposes. Long, therefore, misused her access to the Account to divert funds from their intended use to defray personal expenses.

Long made cash deposits of $19,173.22 into the Account following the date the Loan proceeds were deposited. The difference between funds that Long deposited into the Account and funds that the Court finds Long diverted from their intended use for her personal expenses is $6,957.01.

The Court finds, therefore, that the Loan proceeds came lawfully into Long's hands as part of her agreement to enter into a business partnership with Houlne. Long's diversion of $6,957.01 of the Loan proceeds from the use agreed to by Houlne and herself to her personal use constitutes embezzlement under 11 U.S.C. § 523(a)(4) so long as that diversion of funds was done with fraudulent intent. *See, e.g., Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988); *Driggs*, 787 F.2d at 507. The evidence also persuades the Court that Long's diversion of funds was done with the requisite fraudulent intent to satisfy the intent requirement under § 523(a)(4).

It does appear that Long made an effort to repay the funds that she had taken for her personal use. Houlne and Long's business relationship fell apart during the summer of 2010. The bank statements show that, after Long ceased all ATM withdrawals from the Account, from June, 2010, through January 2011,[4] she made monthly deposits into the Account sufficient to cover the payment to the Lending Club. But it is not necessary for the Court to find that Long intended to permanently deprive Houlne of those funds. "A conversion under which the debtor willfully and maliciously intends to borrow property for a short period of time with no intent to inflict injury but on which injury is in fact inflicted" is sufficient to prove fraudulent intent for embezzlement under § 523(a)(4). H.R. Rep. No. 95-595 at 364 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320 (1977).

The case of *In re Scheller*, 265 B.R. 39, (Bankr. S.D. N.Y. 2001), was an adversary proceeding to exempt a debt from discharge under 11 U.S.C. §§ 523(a)(4) & (6). Plaintiff claimed that the debtor embezzled funds from the company when the debtor withdrew $2,050.00 from the partnership bank account in order to pay personal legal fees in a separate action. *Id*. at

---

[4] Following the filing of her bankruptcy petition, Long made two final deposits on March 4, 2012, in the total amount of $700.00. This amount was insufficient to cover the monthly payment to the Lending Club and resulted in an overdraft on the Account.

ORDER ON COMPLAINT OBJECTING TO
DISCHARGEABILITY OF A DEBT
Adversary No. 11-1394 HRT

49. In its analysis of the "fraudulent intent" requirement of embezzlement under § 523(a)(4), the bankruptcy court held in part that the exception from discharge for embezzlement may not be defended because the debtor "only intended to deprive the owner of his or her property temporarily." *Id*. at 54 (citing *In re Bevilacqua*, 53 B.R. 331, 334 (Bankr. S.D. N.Y. 1985). The court held that the $2,050.00 debt was non-dischargeable as it was incurred through embezzlement.

In *In re Sherman*, 603 F.3d 11 (1st Cir. 2010), the First Circuit Court of Appeals upheld the decision to deny debtor's discharge of a $983,000 obligation resulting from embezzlement. The debtor was a principle in a financial management firm that reassigned the investments of three clients in an attempt to keep the firm afloat. The court held that, even if the firm was "borrowing" with the complete intention to repay, the knowing use of entrusted funds for an unauthorized purpose is still embezzlement under § 523(a)(4). *Id*. at 14.

Thus, even though there is evidence of Long's repayment of significant funds, that partial repayment – while it does reduce the ultimate amount of damages – does not negate the fact that Long diverted the Loan proceeds from their intended use with the fraudulent intent that is required in order for the Court to find a debt nondischargeable for embezzlement under 11 U.S.C. § 523(a)(4).

The $6,957.01 of embezzled funds derived exclusively from interest bearing Loan proceeds and not from business revenues. Because Long's embezzlement resulted in those funds not being available to service the debt taken on by Houlne and Long, the Court will charge Long with interest accrued on the amount embezzled from the date of the Loan through the date of judgment. The Court lacks wholly reliable evidence of the interest rate charged on the Loan. The Court will use its calculated interest rate of 18.433%. That rate is not inconsistent with the 20% interest rate testified to by Houlne but it is the rate of interest that accurately reflects the amount of the payment that is recorded on the monthly bank statements. Thus, the judgment will include interest in the amount of $2,642.07. With interest, the court will enter judgment against Long under 11 U.S.C. § 523(a)(4) in the total amount of $9,599.08.

### III. CONCLUSION

In accordance with the above discussion, it is

**ORDERED** that judgment shall enter against Defendant Robin Annette Long and in favor of Plaintiff Melissa Houlne in the amount of $9,599.08 plus filing costs of $250.00 for a

ORDER ON COMPLAINT OBJECTING TO
DISCHARGEABILITY OF A DEBT
Adversary No. 11-1394 HRT

total judgment of $9,849.08. Such judgment is nondischargeable under 11 U.S.C. § 523(a)(4) and shall accrue post-judgment interest at the federal judgment rate under 28 U.S.C. § 1961.

    Dated this __13__ day of September, 2012.

                                   **BY THE COURT:**

                                   Howard R. Tallman, Chief Judge
                                   United States Bankruptcy Court